MARK D. KAMITOMO
The Markam Group, Inc., P.S.
421 W. Riverside Avenue, Suite 1060
Spokane, WA 99201
(509) 747-0902
(509) 747-1993 – Facsimile

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| ERICH ALEXANDER, JOHNETTE ALEXANDER and E.A., a minor child,<br><br>Plaintiffs,<br><br>vs.<br><br>UNITED STATES OF AMERICA,<br><br>Defendant. | No.<br><br>**COMPLAINT** |

Plaintiffs, Erich Alexander and Johnette Alexander, Husband and Wife, and E.A., a minor child, through their attorneys of record, THE MARKAM GROUP, INC., P.S., and MARK D. KAMITOMO for causes of action against the above-named Defendant, complain and allege as follows:

### I. PARTIES

1.1. At all times material hereto, Erich Alexander was and continues to be a resident of Lacey, Washington, residing in the county of Thurston.

Complaint - 1

1.2. At all times material hereto, Johnette Alexander was and continues to be a resident of Lacey, Washington, residing in the county of Thurston.

1.3. At all times material hereto, E.A., minor child, was and continues to be a resident of Lacey, Washington, residing in the county of Thurston.

1.4. At all times material hereto, to the best information, knowledge and belief of Plaintiffs, Defendant United States of America was acting by and through its agent, Madigan Army Medical Center and its employees/agents, located in the state of Washington, county of Pierce.

## II. JURISDICTION AND VENUE

2.1. This Court has jurisdiction over the parties pursuant to 28 U.S.C. §1346(b).

2.2. Plaintiffs allege that they have exhausted all of their administrative remedies and have satisfied the claim and notice requirements of the Federal Tort Claim Act.

2.3. Venue is proper in the Western Federal District of Washington State as all parties are located in Washington counties.

## III. STATEMENT OF PERTINENT FACTS

3.1. To the best information, knowledge and belief of Plaintiffs, on the date pf birth, 2012, Plaintiff Johnette Alexander (20 years of age) was admitted to Madigan Army Medical Center for the birth of her child, E.A.

3.2. To the best information, knowledge and belief of Plaintiffs, Mrs. Alexander's prenatal course was unremarkable and she was expected to deliver an otherwise normal and healthy child.

3.3. At or near the time of admission, a fetal monitor was applied and the records demonstrate that at or around 23:47 on the date of birth, 2012, the strip demonstrated a reactive fetal heart rate (FHR) pattern. A clinic evaluation conducted by Certified Nurse Midwife (CNM) Mitchell occurred at or around 00:25 on the date of birth, 2012, which indicated that the FHR was a category 1 with no indication of an active HSV infection and that Mrs. Alexander was in the latent phase of labor.

3.4. At or around 00:31, the FHR demonstrated a prolonged FHR deceleration that lasted several minutes.

3.5. Following the prolonged FHR deceleration at 00:31 and up to 01:20 multiple FHR decelerations were noted on the fetal monitor strip.

3.6. At or around 01:20, CNM Mitchell ruptured Mrs. Alexander's

membranes which demonstrated thick meconium. At that time the records demonstrate an Intrauterine Pressure Catheter (IUCP) and a fetal scalp electrode (FSE) were placed. Mrs. Alexander was noted to be C/6-2 with the infant in a vertex position.

3.7. At or around 01:23 hours, the FHR demonstrated a third prolonged deceleration lasting several minutes.

3.8. At or around 01:50, CNM Mitchell documented thick meconium at artificial rupture of membranes (AROM) with a 3 minute FHR deceleration noted. CNM Mitchell further documented that Mrs. Alexander was placed in the chest knee/chest position and terbutaline was administered subcutaneously. To the best information, knowledge and belief of Plaintiffs, both interventions were intended to resuscitate the infant in utero.

3.9. To the best information, knowledge and belief of Plaintiffs, Drs. Miller and Nolan were notified of the FHR deceleration and resuscitative measures taken.

3.10. At around 02:30, a fourth prolonged FHR deceleration was noted on the fetal monitor strip.

3.11. At or around 03:10 the strip documents a severe variable FHR deceleration followed by a fifth prolonged FHR deceleration at or around 03:40

followed by a sixth prolonged FHR deceleration at or around 04:05.

3.12. At or around 04:25, oxytocin was started which, to the best information, knowledge and belief of Plaintiffs, was being utilized to augment labor.

3.13. At or around 04:35, CNM Mitchell documented that Mrs. Alexander's cervix was unchanged and her FHR was now a category 2. Her plan included oxytocin administration and amnio infusion.

3.14. At or around 04:40, the records document that the infant appeared to be having recurrent late and/or variable decelerations.

3.15. From at or around 06:15 until the end of the FHR strip recording, the infant demonstrated recurrent late and/or variable FHR decelerations with minimal FHR variability.

3.16. At or around 09:57 hours, the infant was delivered vaginally in an oocciput posterior presentation with apgars of 1, 7 and 9 at 1, 5 and 10 minutes, respectively. Among other things, the infant's heart rate was less than 100 beats per minute (BPM).

3.17. On or around the date of birth, 2012, a CT of the infant's brain demonstrated a small left parieto-occipital cephalohematoma with underlying overlapping sutures. Following a 10 day hospital stay, the infant was discharged

home with diagnoses to include respiratory distress syndrome, seizures, primary apnea and hypoglycemia.

3.18. A subsequent MRI of the infant's brain dated April 17, 2014, has demonstrated damage consistent with a prior hypoxic ischemic insult.

3.19. To the best information, knowledge and belief of Plaintiffs, as a proximate result of Defendant's negligence outlined herein, the infant is permanently neurologically impaired and has been diagnosed with cerebral palsy.

## IV. CAUSES OF ACTION

4.1. Plaintiffs hereby re-allege each and every allegation set forth in paragraphs 3.1. through 3.19.

4.2. The acts or omissions of Defendant United States of America through its agents, Madigan Army Medical Center and its employees/agents alleged in paragraphs 3.1. through 3.19., in rendering medical care resulted in a breach of the duty of care owed to Plaintiff E.A., minor child, which proximately caused damage to Plaintiff E.A., minor child, the nature and extent of which shall be proven at the time of trial.

4.3. The acts or omissions of Defendant United States of America through its agents, Madigan Army Medical Center and its employees/agents alleged in

paragraphs 3.1. through 3.19., in rendering medical care to Plaintiff E.A., minor child, which proximately caused the damages to Plaintiff E.A., minor child, proximately caused damage to Plaintiff Erich Alexander for loss of consortium, the nature and extent of which shall be proven at the time of trial.

4.4. The acts or omissions of Defendant United States of America through its agents, Madigan Army Medical Center and its employees/agents alleged in paragraphs 3.1. through 3.19., in rendering medical care to Plaintiff E.A., minor child, which proximately caused the damages to Plaintiff E.A., minor child, proximately caused damage to Plaintiff Johnette Alexander for loss of consortium, the nature and extent of which shall be proven at the time of trial.

## V. PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment and relief against each of the Defendants as follows:

1. Judgment in the amount of damages to be proven at the time of trial;

2. For reasonable attorney fees and costs and for such other and further relief as the Court deems just and equitable.

DATED this 19th day of November, 2014.

THE MARKAM GROUP, INC., P.S.
Attorneys for Plaintiffs

/s/ Mark D. Kamitomo
Mark D. Kamitomo, WSBA #18803