UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| ERICH ALEXANDER, JOHNETTE ALEXANDER, E.A., <br><br>  Plaintiffs <br><br> v. <br><br> UNITED STATES OF AMERICA, <br><br>  Defendant. | CASE NO. 3:14-cv-01774-RJB <br><br> ORDER ON PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT RE: HYPOXIC ISCHEMIC ENCEPHALOPATHY |

THIS MATTER comes before the Court on Plaintiffs' Motion for Summary Judgment RE: Hypoxic Ischemic Encephalopathy. Dkts 53, Dkt. 61-1. See Dkts. 54, 61. The Court has considered Defendant's Response (Dkt. 73), Plaintiffs' Reply (Dkt. 79), and the remainder of the file herein. The Court deems oral argument unnecessary.

ISSUE

Plaintiffs request an order holding the following:

(1) The injuries suffered by E.A., including his brain injuries, **were the result** of Hypoxic Ischemic Encephalopathy (HIE); and

(2) The HIE that caused E.A.'s injuries occurred **during the course of Mrs. Alexander's labor and delivery** as opposed to prior to her admission to Madigan.

Dkt. 61-1, at 1 (emphasis added).

ORDER ON PLAINTIFFS' MOTION FOR
SUMMARY JUDGMENT RE: HYPOXIC
ISCHEMIC ENCEPHALOPATHY- 1

Defendant's Response appears to concede the first issue, that E.A.'s brain injuries were the result of HIE. Dkt. 73, at 3, 4. Defendant does not concede the second issue, the timing of E.A.'s injuries.[1] Dkt. 73, at 4-7.

## FACTUAL BACKGROUND

Both parties appear to agree on the following sequence of events:

February 1, 2012, 11:47pm- Plaintiff Johnette Alexander is admitted to Madigan Army Medical Center.

February 2, 2012, 9:57am- Mrs. Alexander gives vaginal birth to Plaintiff E.A.

February 2, 2012, 5:39pm- CT scan of E.A. is taken. E.A. shows signs of HIE.

February 3, 2012, 4:45pm- First MRI of E.A. is taken. E.A. shows signs of HIE.

April 17, 2014- Second MRI of E.A. is taken. E.A. shows signs of HIE.

The parties disagree about how to interpret the CT scan, apparent from an exchange between Plaintiffs' counsel and Defendant's expert, Dr. Gordon Sze:

> Q: In terms of Dr. Stimac's interpretation of the CT scan and the two MRs, you two appear to be the same in terms of what you see, correct?
>
> A: Yes.
>
> Q: The differences come in terms of the timing of when that injury [to E.A.] occurred?
>
> A: Yes, that is correct. . . . Dr. Stimac is saying that the CT scan is consistent with an injury that occurred during or shortly after birth.

Dkt. 61-1, at 42.

Dr. Sze is of the opinion that because the CT scan showed signs of HIE, the HIE occurred prior to Mrs. Alexander's February 1, 2012, 11:47pm admission to Madigan:

---

[1] Defendant also does not concede "the scope, extent, and valuation of damages" and that E.A.'s injury was caused by Defendant's negligence. These issues are not directly raised by Plaintiffs' motion and will not be addressed by this Order. Plaintiffs' attempts to widen the scope of its motion in the Reply to include the scope of the injury must be rejected.

ORDER ON PLAINTIFFS' MOTION FOR
SUMMARY JUDGMENT RE: HYPOXIC
ISCHEMIC ENCEPHALOPATHY- 2

> After an hypoxic ischemic event, abnormalities become apparent on CT examination . . . approximately 24 hours . . . In [E.A.'s] case, the CT scan . . . from 2/2/12 at 5:30pm when the neonate was approximately 7½ hours old shows . . . [an] appearance [that] is consistent with the early findings of an hypoxic ischemic event that **preceded the CT examination by approximately 18 to 24 hours**, or from 2/1/12 at approximately 5pm to 11pm or earlier.

Dkt. 61-1, at 54, 55 (emphasis added). Dr. Sze bases his opinion on nearly 30 years of practicing neuroradiology, as well as written resources. Dkt. 75, at ¶21. For Dr. Sze, "the [written resources] that come to mind would be the ACOG Bulletins and also the Barkovich textbooks, for starters." Dkt. 74-5; Dkt. 61-1, at 43; Dkt. 75, at ¶¶6-17. *See* Dkt. 61-1, at 47-50 (excerpts from *Pediatric Neuroimaging*, 5th Edit., by A. James Barkovich and Charles Raybaud). Dr. Sze considers Dr. Barkovich's textbooks to be highly respected, but not authoritative. Dkt. 74-5, at 8. According to Dr. Sze, "we are dealing with people so that there is a bell-shaped curve. And in addition, of course, to be honest with you, we just don't write radiology that way." Dkt. 61-1, at 43. *See also*, Dkt. 61-1, at 44.

Relating to the timing of the HIE, Defendant's expert, Dr. A. Thomas Collins, testified as follows:

> Q: Are you going to dispute that there were likely anoxic hypoxic events that occurred during the first and second stage of labor or is that just outside your area of expertise?
>
> [Objection]
>
> A: I won't dispute it.
>
> Q: You would agree on a greater than 50 percent probability that there were events that are consistent with anoxic hypoxic episodes?
>
> A: Yes.
>
> Q: Are you aware of anything else other than the first and second stage of labor before the mother got to the hospital for delivery of her child or afterwards that would be responsible for an anoxic hypoxic insult of some kind?
>
> [Objection]

1      A: I'd say no except for the concerns we've talked about this past couple of hours that
2      I've had about the wishy-washy things about infection and the normal exam and the lack
of placental and the fact that he doesn't look typical in the first few minutes and hours of
3      life.

4      Q: I think you also said that none of those would be greater than 20 percent, correct?

5      [Objection]

6      A: Correct.

Dkt. 61-1, at 22.

Similarly, Defendant's expert, Dr. Ryan McAdams, testified about the possibility of a syncopal episode occurring prior to Mrs. Alexander's admission that may have contributed to the HIE, but he agreed that the possibility was less than more probable than not. Dkt. 61-1, at 31, 36.

## SUMMARY JUDGMENT STANDARD

Summary judgment is proper only if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1985). There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the non moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)(nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt."). *See also* Fed.R.Civ.P. 56(e). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby,*

*Inc.*, 477 .S. 242, 253 (1986); *T.W. Elec. Service Inc. v. Pacific Electrical Contractors Association*, 809 F.2d 626, 630 (9th Cir. 1987).

The determination of the existence of a material fact is often a close question. The court must consider the substantive evidentiary burden that the nonmoving party must meet at trial – e.g., a preponderance of the evidence in most civil cases. *Anderson*, 477 U.S. at 254, T.W. *Elect. Service Inc.*, 809 F.2d at 630. The court must resolve any factual issues of controversy in favor of the nonmoving party only when the facts specifically attested by that party contradict facts specifically attested by the moving party. The nonmoving party may not merely state that it will discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial to support the claim. *T.W. Elect. Service Inc.*, 809 F.2d at 630 (relying on *Anderson, supra*). Conclusory, non specific statements in affidavits are not sufficient, and "missing facts" will not be "presumed." *Lujan v. National Wildlife Federation*, 497 U.S. 871, 888-89 (1990).

## DISCUSSION

At issue is whether there is a genuine issue of material fact as to the timing of the HIE. According to Plaintiffs, the HIE that caused E.A.'s injuries undisputedly occurred during Mrs. Alexander's labor and delivery, not prior to her admission to Madigan. Dkt. 61-1, at 8-15. Plaintiffs acknowledge that Defendant's experts have opinions to the contrary, but contend that the opinions are speculative and not supported by the facts. *Id*.

a. Dr. Sze.

Regarding Dr. Sze, whose expert report concluded that the HIE occurred approximately 18-24 hours prior to E.A.'s birth, Plaintiffs argue that Dr. Sze cannot point to any facts to support his opinion, and that the "sole basis" for his opinion is speculation based on Plaintiffs' "reliance upon Dr. Barkovich's text and the ACOG Bulletin[,]"neither of which support Dr. Sze's

1  conclusion. Dkts. 61-1, at 12-14; 79, at 3, 4. Plaintiffs also point out that Dr. Sze concedes that
2  the MRI results are consistent with HIE occurring at Madigan. Dkt. 79, at 3.

3  Plaintiffs' arguments are unavailing. Plaintiffs' argument that there is "no evidence" of
4  an HIE event prior to Mrs. Alexander's admission and that Dr. Sze is "unable to identify and
5  correlate" an HIE event with the CT findings ignores the CT scan itself. The CT scan *is* the
6  evidence of the timing. To the extent that a CT scan shows the occurrence of an HIE event
7  approximately 24 hours prior—an opinion that Dr. Sze substantiates—the CT scan supports
8  Defendant's timing theory. Disagreement about how to interpret the CT scan results only goes to
9  the weight of the evidence and to the experts' credibility.

10  Plaintiffs' argument that Dr. Barkovich's texts do not support Dr. Sze's opinion fails,
11  because the two can be easily reconciled. Dr. Barkovich's text refers to a 12-24 hour timeframe
12  for HIE to appear on a CT scan, which does not necessarily conflict with Dr. Sze's opinion that
13  HIE takes approximately 18-24 hours to appear, especially where the text elsewhere refers to a 1-
14  7 day timeframe. Dkt. 61-1, at 48. Plaintiffs do not provide ACOG Bulletins for the Court's
15  consideration, so the Court cannot discern how they conflict with Dr. Sze's opinion, but even if
16  they conflicted with Dr. Sze's opinion, Dr. Sze testified that neither the ACOG Bulletins nor Dr.
17  Barkovich's texts were authoritative.  Dkt. 74-5, at 8. Dr. Sze also stated that the two resources
18  he cited were not an exhaustive list of resources, Dkt. 74-5; Dkt. 61-1, at 43; Dkt. 75, at ¶¶6-17
19  ("…for starters."), and that he in part relied on his nearly 30 years of radiologist experience as
20  the basis for his opinion.

21  Making all inferences in Defendant's favor and declining to make any credibility findings
22  about Dr. Sze, the Court cannot find that Dr. Sze's opinion is "pure speculation," devoid of any
23  factual foundation. While Plaintiffs may have identified shortcomings of Dr. Sze's opinion, their
24

arguments only point to the weight given to the evidence. Dr. Sze's opinion creates a material issue of fact as to the timing of the HIE occurrence.

     b.  *Dr. Collins and Dr. McAdams.*

Both Dr. Collins and Dr. McAdams testified to the possibility of other factors that could have caused HIE prior to Mrs. Alexander's admission to Madigan. Dr. Collins testified about "concerns . . . [he had] about the wishy-washy things about infection and the normal exam and the lack of placental and the fact that [E.A.] doesn't look typical in the first few minutes and hours of life[,]" but he admitted that their affect would be no more than 20 percent. Dkt. 61-1, at 22. Similarly, Dr. McAdams testified about the possibility of a syncopal episode contributing to the HIE, but he agreed that the possibility was less than probable. Dkt. 61-1, at 31, 36. Taking the opinions of Dr. Collins and Dr. McAdams as true, it appears that their opinions alone, without Dr. Sze's opinion, may not have been sufficient to overcome Plaintiffs' showing as to the timing of the HIE. However, because Dr. Sze's opinion creates an issue of fact, at present the Court need not address Plaintiffs' arguments about Dr. Collins and Dr. McAdams.

As to the timing of the HIE—whether it occurred prior or after to Mrs. Alexander's admission to Madigan—Plaintiffs' motion for summary judgment should be denied.

                              \* \* \*

THEREFORE, Plaintiffs' Motion for Summary Judgment RE: Hypoxic Ischemic Encephalopathy (Dkt. 53) should be GRANTED IN PART on the issue of whether injuries suffered by E.A., including his brain injuries, were the result of hypoxic ischemic encephalopathy.

The motion should be DENIED IN PART on the issue of whether the hypoxic ischemic encephalopathy occurred prior to or after Plaintiff Johnette Alexander's admission to Madigan Army Medical Center.

The Clerk is directed to send uncertified copies of this Order to all counsel of record and to any party appearing *pro se* at said party's last known address.

Dated this 19th day of May, 2016.

*/s/ Robert J. Bryan*
ROBERT J. BRYAN
United States District Judge

ORDER ON PLAINTIFFS' MOTION FOR
SUMMARY JUDGMENT RE: HYPOXIC
ISCHEMIC ENCEPHALOPATHY- 8